FILED
 2022 Mar-09  AM 08:55
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **HANNAH REID, individually and on behalf of a class of all similar situated Alabama citizens and Alabama entities in Alabama as defined herein,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EXPRESS SCRIPTS, INC.,**<br><br>**Defendant.** | Civil Action Number<br>**5:21-cv-01367-AKK** |

## MEMORANDUM OPINION

Hannah Reid sues Express Scripts, Inc. seeking to proceed on behalf of herself and a class of similarly situated Alabamians based on a "data processing fee" ESI charges for certain prescription-records requests. *See* doc. 1. Reid contends that ESI's levying of this fee constitutes breach of contract, unjust enrichment, and fraudulent misrepresentation and concealment and offends the Alabama Deceptive Trade Practices Act. *See id.* at 9–14. On the same day it answered the complaint and before any discovery, ESI filed a motion for summary judgment. In the motion, ESI argues that Reid lacks standing and cannot establish genuine disputes of material facts on any of her claims. *See* docs. 14; 15. The motion, which Reid opposes in

part because she has not had an opportunity to conduct discovery, is briefed, docs. 25; 26, and due to be granted because Reid lacks standing.

## I.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings" and establish a "genuine issue for trial." *Id.* at 324. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the nonmovant. *Id.* at 255. The court resolves factual disputes in the nonmoving party's favor when sufficient competent evidence supports the nonmoving party's version of the facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). But "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

Relevant here, "[s]ummary judgment is premature when a party is not provided a reasonable opportunity to discover information essential to his [or her] opposition." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1064 (11th Cir. 2013); *see Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997) ("[T]he party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion."). At the same time, however, the court "is not required to await the completion of discovery before ruling on a motion for summary judgment." *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990). The Eleventh Circuit "expect[s] that district judges will be open" to summary judgment motions "at an early stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1188 (11th Cir. 2009).

## II.

ESI maintains a computerized database for "prescription benefit claims data" from pharmacies that fill prescriptions for its plan members. *See* docs. 1 at 3; 15 at 1–2. According to ESI's "Authorization to Use and Disclose Health Information" form, plan members may access their data through several means. *See* doc. 15-2 at 3. Members may "call the number on the back of [their] prescription identification card[s]" to receive their prescription claims information "free of charge." *Id.*

3

Members may also access and print this information "for free for the last 24 months of service by logging into www.express-scripts.com." *Id.* And, according to an ESI representative, members can "request that their records be sent to a third party at no charge." Doc. 15-1 at 4. However, third parties who are not "a member's legal personal representative" may access a member's information only by completing an authorization form and paying "a non-refundable processing fee of $90.00." *See* docs. 1 at 18; 15-2 at 3.

Prior to filing the instant lawsuit, Reid, a customer of ESI, retained the law firm Swiney & Bellenger, LLC to represent her in a claim for Social Security disability benefits. *See* docs. 1 at 6; 15-3 at 2. Reid agreed to reimburse Swiney & Bellenger "for any expenses it incurred on [her] behalf with respect to [that] matter, including expenses to obtain pharmacy records." Doc. 1 at 7. The law firm also "validly and legally assigned, in a written executed document, to . . . Reid all rights, interest, and legal claims or defenses sounding in contract with respect to the pharmacy records . . . and charges in connection therewith." *Id.*

In the course of the Social Security matter, Swiney & Bellenger wrote to ESI to request "copies of all pharmacy records/bills related to the care and treatment of Ms. Reid for the last five (5) years." Docs. 1 at 6; 15-3 at 2. The law firm attached an information-release authorization signed by Reid and asked ESI to "[p]lease contact [the law firm's] office for approval" if "copying charges" exceeded $100.

4

Doc. 15-3 at 2–3. ESI responded that it "[was] unable to process [the] request" because Swiney & Bellenger failed to submit a "non-refundable processing fee of $90.00." Doc. 1 at 18. ESI instructed Swiney & Bellenger to submit certain "enclosed documents" and the processing fee to receive Reid's records, and the law firm complied. *See id.* at 7, 18. Reid asserts that she "has [reimbursed] or is legally obligated to reimburse" the law firm for the $90 fee. *Id.* at 7.

This lawsuit centers on the fee's legality. For its part, ESI asserts that when it receives a third-party request for a member's prescription claims history, it "takes a number of steps to process the request." Doc. 15-1 at 4. Specifically, ESI states that it analyzes the request to determine "if it is new or already in process"; enters a new request into a "tracking log"; verifies that the request complies with HIPAA, includes the required documentation, and contains the processing fee; corresponds with the requesting party about missing information, if any; gathers responsive records; prepares an affidavit, if needed; drafts a letter; and mails the letter and the records to the requesting party. *Id.* In a nutshell, ESI contends that these steps justify the fee, while Reid argues that the fee violates Alabama law.

### III.

Reid pleads claims for breach of contract, unjust enrichment, fraudulent misrepresentation and concealment, and violations of the Alabama Deceptive Trade Practices Act in connection with ESI's processing fee. *See* doc. 1 at 9–14. ESI

5

responds that Reid lacks standing and fails to establish genuine disputes for trial. *See generally* doc. 15. The court begins with the issue of standing, for if Reid lacks standing, then the court's inquiry ends there, too. *See A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019).

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies," a requirement that underlies the doctrine of standing. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). To have standing, a litigant must establish (1) some concrete, particularized, and actual or imminent injury, (2) fairly traceable to the defendant's conduct, and (3) likely to be redressed by a favorable judicial decision. *Id.*; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). These elements "must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Wilding*, 941 F.3d at 1124 (quoting *Lujan*, 504 U.S. at 561); *31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003).

In this case, ESI argues that based on the undisputed facts, regardless of any discoverable material Reid hopes to obtain, Reid cannot establish that her alleged injury—the payment of the $90 fee—is fairly traceable to ESI's conduct. Doc. 15 at 18. ESI contends that "[b]eyond signing a generic authorization form for the release of personal health information, [Reid] played no role in requesting her prescription claims history," and her alleged injury "stems directly and entirely from

her lawyers' decision to pay $90 for her prescription claims history as opposed to employing the available means to obtain the records for free . . . ." *Id.* at 19.

Reid makes three arguments in response. First, she frames the traceability of her alleged injury at a higher level of abstraction, asserting that "[t]he fee was caused by [ESI's] own conduct of charging said fee . . . ." Doc. 25 at 5. Relatedly, she contends that Swiney & Bellenger "acted as [her] agent" when it requested her records and that she reimbursed or must reimburse the law firm, so she requested and ultimately paid or will pay the fee. *Id.* at 5–6. Second, Reid claims that the law firm's assignment of its contractual legal claims and defenses related to her pharmacy records gives her "derivative standing." *Id.* Finally, Reid claims that ESI's motion is premature and that the court should defer ruling until after discovery, so that she can properly oppose ESI's contentions. *Id.* at 7, 10. The court addresses these arguments in turn.

A.

Reid's alleged injury must be fairly traceable to ESI's challenged conduct. *See Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1336 (11th Cir. 2019). In other words, Reid's $90 payment must bear a causal connection to ESI's levying of the fee for third-party requests. *See id.* However, Reid's allegations and the undisputed facts make clear that ESI did not cause her alleged injury in the relevant sense.

7

Reid accurately observes that, generally speaking, she would not have reimbursed or need to reimburse Swiney & Bellenger $90 if ESI did not charge the fee in the first place. Doc. 25 at 5. But she ignores that the law firm's conduct in fact caused the fee's imposition, because Reid could have acquired her claims history from ESI at no cost. ESI's "Authorization to Use and Disclose Health Information" form[1] counsels that

> [m]embers wanting PBM Prescription Claim Information sent to the address on file free of charge should call the number on the back of the prescription identification card. The Express Scripts website also provides all members the ability to access and print PBM Prescription Claim Information for free for the last 24 months of service by logging into www.express-scripts.com.

Doc. 15-2 at 2. The form also instructs: "For those requests for PBM Prescription Claims Information not submitted by a member's legal personal representative, please also submit a check or money order for the non-refundable fee of $90.00." *Id.* It is unclear, and Reid does not explain, why Swiney & Bellenger did not discuss with her or select the no-cost avenues. Regardless, Reid's agreement to reimburse the law firm, which chose to pay the processing fee, directly caused the fee's avoidable imposition.

---

[1] ESI attached a copy of this form to its motion, *see* doc. 15-2, and it is also available at https://www.express-scripts.com/members/hipaa/docs/prescriptionRecords.pdf.

That Reid authorized the law firm to retrieve her records, *see* doc. 15-3 at 3, does not alter this analysis. As other federal courts have concluded in similar cases,[2] the payment of the fee did not result from ESI's conduct but, more exactly, from Reid's agreement to pay the law firm that opted to pay the fee instead of utilizing free alternatives. Thus, Reid's alleged injury is not "fairly traceable" to ESI's conduct, and she lacks standing to assert her claims.

B.

Reid also claims she has derivative standing because Swiney & Bellenger legally assigned her "all rights, interest, and legal claims or defenses sounding in contract with respect to the pharmacy records obtained on [her] behalf and charges in connection therewith." Doc. 25 at 6. In support of this theory, she cites *Griffin v. Coca-Cola Enterprises, Inc.*, 686 F. App'x 820, 821 (11th Cir. 2017), and *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, 1241 (11th Cir. 2001). *See id.* But these cases address derivative standing under ERISA, rather than standing

---

[2] *See Gearhart v. Express Scripts, Inc.*, 422 F. Supp. 3d 1217, 1223 (E.D. Ky. 2019) (holding, at summary judgment, that the plaintiff's payment of the records-request fee to ESI was not fairly traceable to ESI's conduct because the plaintiff had no role in requesting the records beyond signing an authorization form, did not know what records his lawyers requested on his behalf, and did not interact with ESI about the request); *Harrod v. Express Scripts, Inc.*, No. 8:17-cv-1607-T-30TGW, 2019 WL 8273650, at *3 (M.D. Fla. Aug. 16, 2019) (concluding, at summary judgment and pre-class certification, that the plaintiff's payment to ESI did not result from ESI's conduct but rather from the plaintiff's arrangement with her lawyers and "[her] lawyers' decision not to seek the means they ha[d] available to request [her] records for free"). To be sure, these rulings occurred after the parties had conducted some discovery. *See Gearhart*, 422 F. Supp. 3d at 1221–22; *Harrod*, 2019 WL 8273650, at *1. But, as explained in greater depth later in this opinion, discoverable information would not change that the allegations and undisputed facts show Swiney & Bellenger opted for the $90-fee route over the free alternatives.

9

under Article III.³ Moreover, even if Reid could derive standing through her law firm's assignment, it is not clear that her law firm has independent standing for the reasons outlined with respect to Reid. Thus, Reid's contention is unfortunately unavailing.

## C.

Finally, Reid asks the court to defer ruling on the motion so the parties can conduct discovery. Doc. 25 at 10–12. The court is sympathetic to her position, given that ESI filed its answer on the same day it moved for summary judgment, and Reid had to respond without the benefit of discovery. *See id.* at 12 (citing docs. 13; 14). But the undisputed facts are dispositive: Reid lacks standing to assert her claims.

Reid attempts to avoid this conclusion by invoking Federal Rule of Civil Procedure 56(d) and describing information purportedly necessary to her opposition.⁴ *See* docs. 25 at 12; 25-1 at 2–6. Indeed, summary judgment would be premature if Reid "[was] not provided a reasonable opportunity to discover

---

³ *See Griffin*, 686 F. App'x at 821 ("To maintain an action under ERISA, a plaintiff must have standing to sue under the statute, which is not jurisdictional, Article III standing, but a right to make a claim under the statute."); *Hobbs*, 276 F.3d at 1241–42 (describing how healthcare providers may "use derivative standing to sue under ERISA" if the provider "obtain[s] a written assignment of claims from a patient who had standing to sue under ERISA as a 'beneficiary' or 'participant.'").

⁴ In relevant part, Rule 56 states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court can defer considering or deny a motion for summary judgment. FED. R. CIV. P. 56(d)(1).

10

information essential to [her] opposition." *See Smith*, 713 F.3d at 1064. However, the materials Reid identifies would not change the standing analysis,[5] a threshold inquiry that a litigant or the court can raise at any time. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). The Circuit expects district courts to "be open" to summary judgment motions "at an early stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery." *Cordoba*, 419 F.3d at 1188. Based on the undisputed facts, discoverable information would not defeat the finding that Reid lacks standing.

## IV.

To close, Reid lacks standing because her alleged injury is not fairly traceable to ESI's conduct. *See Wilding*, 941 F.3d at 1124. Because the court therefore lacks jurisdiction, it expresses no other determinations as to Reid's claims. The court will dismiss her claims without prejudice by separate order.[6]

---

[5] For example, Reid's counsel attests that Reid would depose ESI's senior claims manager, Cindy Benfield—the declaration of whom ESI attaches to its motion—and seek documents related to ESI's actual expenses for third-party requests. *See* doc. 25-1 at 5 (citing doc. 15-1). But this would not affect whether Reid has standing, because it would not change the undisputed facts that Swiney & Bellenger chose to pay the fee instead of employing an available no-cost option and that Reid agreed to reimburse the law firm.

[6] *See Wilding*, 941 F.3d at 1133 (ordering the district court to dismiss without prejudice the claims that "fail[ed] for lack of standing" and to dismiss with prejudice the claims that "fail[ed] on the merits"); *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1234–35 (11th Cir. 2008) (holding that the district court should have dismissed the complaint without prejudice because the plaintiff lacked standing); *Am. Hospice, Inc. v. Sebelius*, No. 1:08–cv–

**DONE** the 9th day of March, 2022.

                                                */s/ Abdul K. Kallon*
                                               **ABDUL K. KALLON**
                                      UNITED STATES DISTRICT JUDGE

---

01879–JEO, 2010 WL 9013005, at *17 (N.D. Ala. Jan. 17, 2010) (noting that dismissal without prejudice "is the proper disposition when a plaintiff is found to be without standing").

12